B. B. HART, Appellant, v. THE MT. PLEASANT PARK
STOCK COMPANY AND THE MISSOURI VALLEY
SPIRITUALIST ASSOCIATION.

**Estoppel: PRINCIPAL AND AGENT.** One who is an agent of an asso-
ciation, and also stockholder in a company, can base no rights
upon a clause in a contract between the two which he inserted
without authority, and which was repudiated as soon as discovered.

**Ratification: CORPORATIONS.** Where a meeting of two associations
eliminates provisions in a contract between them, one who is a
stockholder of one, and member of the other, and presides at the
meeting, without objecting to the change, ratifies it.

**Corporations: RIGHTS OF STOCKHOLDERS:** *Practice.* The transfer
by a stock company to a religious association, to which it is aux-
iliary, of land worth fifteen thousand dollars, subject to all indebt-
edness of the stock company, all claims of its stockholders, and
upon which is given a lien for notes for the stock liability, exe-
cuted by the association, does not impair the rights of a stock-
holder in the company and member of the association, who pur-
chased his stock when the land was worth only two thousand
eight hundred dollars, so as to entitle him to compel a re-transfer
of the land, or have a receiver appointed.

*Appeal from Clinton District Court.*—HON. W. F.
BRANNAN, Judge.

THURSDAY, FEBRUARY 13, 1896.

WE shall only set out such of the facts as may
be necessary to a proper understanding of the ques-
tions presented and determined. November 21, 1882,
the Mississippi Valley Spiritualist Association was
incorporated as the Iowa Conference of Spiritualists,
the name being afterwards changed to the Mississippi
Valley Spiritual Association. This body will here-
after be referred to as the "Association." The object
of this corporation was stated to be the promotion of
general intelligence, good morals, liberal sentiments,

and the teaching of spiritualism, through its phenomena and philosophy. The usual officers were provided for. The corporation was authorized "to make contracts, acquire and transfer property, * * * and make by-laws and rules and regulations * * * for the management of its affairs, according to law." There was no provision for issuing shares of stock, and none were issued. This corporation had contracted for the purchase of certain land, for the sum of two thousand, eight hundred dollars, to be used as a camping ground. It entered into the possession of said premises, and dedicated the same as the Mt. Pleasant Park, and began holding camp meetings thereon in 1883. In 1884, it was determined that, to accomplish the objects of the association, a stock company must be formed. Thereupon, in the spring of 1884, the Mt. Pleasant Park Stock Company was organized and incorporated. This corporation will hereafter be referred to as the "Stock Company." The object of the stock company was, as an auxiliary of the association, to raise funds with which to purchase said park, and to improve the same, for the use of the association, and for other purposes which might afford a revenue to the company. The capital stock was limited to fifty thousand dollars, in shares of ten dollars each. Provision was made for the usual officers, and an executive board. Each stockholder was authorized to cast one vote for each share of stock, and it required two-thirds of the directors to constitute a quorum. It should be said that most of the time the offices in both corporations were filled by the same persons. The association passed a resolution, authorizing its president and secretary to enter into a contract with the stock company, authorizing it to take title to the land, and requiring it, "as an auxiliary association," to meet all the obligations of the association; to

improve and furnish the grounds for the association, as it might determine, for its camp meetings. The resolution also provided, that "the.stock company, after paying all expenses each year of said camp meeting, may make a dividend of the balance of the funds raised, * * * unless the amount shall exceed eight per cent. on * * * money expended on said grounds, in which case, the balance exceeding eight per cent. shall be subject to the direction of the association;" also, that the association might, at any time thereafter, reimburse the stock company "for all money expended by them," and require the stock company to convey the park to said association. In pursuance of this resolution, which was passed early in 1884, as it afterwards appeared, the president and secretary of the association entered into a contract with. the stock company, which, in some respects, exceeded the authority given them, viz:, in authorizing the stock company, in a certain event, to sell the park, and in reimbursing the stockholders, by paying the amount of their stock, with *interest thereon*. It appears that this contract was never reported to the association for its approval, but in 1888, it discovered what had been done, and, at a meeting of both the stock company and association, the contract so made was modified, by eliminating the two provisions above referred to. Prior to this change in the contract, and in 1885, this stock company made an extraordinary effort to sell its stock; and, it is claimed, that in reliance upon said contract, as originally made, the plaintiff and others subscribed and paid for additional stock to pay for the park grounds, and a deed was taken in the name of the stock company. It appears, however, that the balance due for the park was paid, not by the stock company, but by the directors giving their notes, which obligations were finally paid in 1892, by the association, as a debt of the stock

company. In 1891, committees were appointed by the two corporations to arrange for a transfer of the property to the association. They agreed upon a report, which was approved by the majority of the stockholders of the stock company, and by both corporations. That agreement was, in substance, that the association should assume all debts and liabilities of the two corporations, pay the debts, and, for the stock liability, the association should execute its notes to the stock company, or to the holder of any stock who desired to surrender his stock to the association, for the face value of the stock, and the association to receive a conveyance of the park. In pursuance of this arrangement, the officers of the stock company executed to the association a trust deed conveying the property to it, and subjecting said property to the same liability for all indebtedness of the stock company, and also to all claims of the stockholders, the notes for stock liability to be paid in five years, without interest. It was also provided that the notes should be liens upon the park until paid; that the title and interest of the stock company should not cease until all such liabilities were paid. This deed was unanimously approved and confirmed by the stock company. Plaintiff refused to take the notes of the association, and instituted this suit, in which he makes the two corporations, only, defendants. In his bill he seeks to recover the amount he has paid for stock, with interest thereon; asks for the appointment of a receiver, and for a sale of the land, and payment of his claim out of the proceeds. Against this claim the defendants urge (1) the invalidity of the original contract under which plaintiff claims; (2) acquiescence in, and ratification of the acts done, and which are now complained of; (3) that plaintiff has no right to sue in his own name. The

court below dismissed plaintiff's petition, and rendered a judgment against him for the costs, and he appeals. —*Affirmed.*

*L. A. & F. W. Ellis* for appellant.

*R. W. Stewart* for appellees.

KINNE, J.—I. We shall not attempt to discuss, much less determine, the many questions argued by counsel. To our minds, a consideration of two of the questions will be decisive of this case. Defendants insist that plaintiff has acquiesced in and ratified the acts of which he now complains. We cannot undertake to recite all of the very many facts which we think fully show that this claim is well founded. We may refer to a few of them. Plaintiff was one of the prime movers in the organization of both corporations, and he continued his interest therein, until it became apparent to him that he, and those acting with him, could no longer control the affairs of the two corporations. Until that time arrived, he had, as a member of the association, as a stockholder in the stock company, and as an officer, been present at most, if not all, of the meetings of the corporations, and had acquiesced in all that had been done. He drew the original contract, upon which he now bases his right to recover; he was present and presided at the meeting of the association when the part of that contract was eliminated, of which he now complains; and, though there is a conflict in the evidence, we incline to the opinion that the action of the body, in eliminating the parts of the contract upon which plaintiff now relies, was unanimous. Certain it is, he made no objection thereto. And being present, and not objecting, he ought not now to be heard to complain of what was done. True, he says he did object,

but the weight of the evidence is against him. He was more or less of the time an officer in both of these corporations; was for five years prior to 1890, president of the stock company; and was, as he testifies, a supporter of the association, in various ways, up to the very time of the trial of this case in the court below. He was present at a meeting of the stock company when a committee was appointed to confer with a like committee of the association touching the transfer of the park to the latter; also at a meeting when the officers reported their action in executing the trust deed. After the terms and conditions of the deal had been arranged, whereby the title to the park was to be transferred to the association, and to be ·charged with all debts, and it was to give its notes for outstanding stock, to be secured by the land, and it was sought to get stockholders to donate the stock to the association, plaintiff donated ten shares. Indeed, he was the first man to make a donation, and thus attempt to further the carrying out of an arrangement, which he now claims deprived him of substantial rights which he formerly possessed. He claims that a condition was attached to this donation, but the weight of the evidence is to the contrary. He donated money, only the summer before this case was tried, to pay a debt of the association. He was present when, by a unanimous vote, the trust deed was approved. From these and many other facts, it seems clear that plaintiff acquiesced in what was done, and of which he now complains, and, as to some matters now complained of, he lent his active approval. His action has been such that he has no just cause for complaint.

II. If we should be in error as to our view of the testimony, and consequently as to the conclusions reached above, there is still another reason why plaintiff is not entitled to the relief asked: According to his claim, he was to have the amount paid for his

stock, with interest thereon, and a lien or claim upon the land to secure said sums. Now, we find that the association never authorized or ratified the making of a contract empowering the stock company to, in any event, sell the land, and pay the amount paid for stock, with interest thereon. He was one of the men authorized to draw that contract. He knew the measure of his authority. He exceeded it, and, unless it was ratified thereafter by the association, he is in no position to claim the benefit of provisions therein, which he was not authorized to make. Now, the association, just as soon as the fact was brought to its notice that the contract provided for the sale of the property and the repayment to stockholders of the amount they had paid for the stock, with interest thereon, repudiated these provisions. Having, as the agent of the association, wrongfully inserted such provisions in the contract, he cannot be heard to insist upon a right of recovery based thereon. Now, how were his rights impaired by the subsequent action of the stock company in deeding the land to the association? He, theretofore, had his stock, and the amount paid for it was a charge upon the land. By the new arrangement he had his stock, and it still remained a charge upon the land. He might, it is true, take the notes of the association, for which the land stood as security, for the amount he had paid for his stock, or he might surrender his stock to the stock company, and by it settle with the association; but, in any event, for the amount he had paid for his stock, he was at all times secured by the land, and in either case, his security was preserved to him unimpaired. Besides, when he bought his stock, the land which stood as security for his investment, was worth only two thousand eight hundred dollars, while now, according to his own evidence, it is worth fifteen thousand dollars. Irrespective of his right to bring this suit,—a question

we have not considered,—it is impossible to discover how any substantial right he possessed in the first place, has been impaired by the subsequent acts of the corporations, of which he now complains. The terms and conditions upon which the land was deeded to the accociation, amply protect every interest he has, and there is no occasion for taking this property out of the hands of the owners, in the absence of any showing that they are doing anything to injuriously affect plaintiff's rights, or to impair his security. The decree below is AFFIRMED.